On behalf of the FDL-1, Mr. Whitman H. Briskey. On behalf of the FDL-3, Mr. Timothy G. Shelton. Good morning, Mr. Shelton. I'm sorry, Mr. Briskey. Good morning, Your Honor. Your Honors. May it please the Court, my name is Whitman Briskey of Malkin Baker, Chicago, representing Young America Foundation. My associate, Amy Parrish, is also with me at the council table this morning. This case is an appeal as of right from the dismissal of a legal malpractice case filed against Alice Wood. The case was dismissed on statute of limitations grounds, based on the trial court's conclusion that the voluntary dismissal under Section 2-1009 of a prior timely filed case, based on the same claims, could not serve as the basis for invoking the saving statute under Section 13-217, because the prior case had been filed when YAF had not registered as a foreign not-for-profit corporation. For the defendant to prevail, she must prevail on all three of the primary arguments. First, defendant must prevail on the argument that YAF was conducting affairs within the meaning of 805 ILCS 105-11370. How is the term conducting affairs different from transacting business? I don't think it's different in any respect. They use different words, but conducting is essentially a synonym for transacting. And affairs and business are essentially synonymous, at least insofar as the activities that are concerned in this case. And both phrases are followed by the phrase in Illinois, which requires the activities, whatever they are, to have been conducted in Illinois. And the activities of YAF were almost exclusively conducted from Virginia or California, from out of state. Almost. Almost. The other activities were sporadic in time. Correct. And over a 10-year period, I think there were four cases where YAF had an agent within Illinois. And so this is, it seems to me, not a continuing activity, which is implied by the phrase conducting. So is your position they were not conducting business in Illinois? My position is that they were not conducting affairs in Illinois. That is correct. All right. Well, if they were active with student groups in the campuses, they held conferences, they met with donors in Illinois, sponsored lectures, you're saying that would not be sufficient to constitute conducting affairs in Illinois? Well, don't forget that these lectures that were sponsored were conducted by the local student organization, not by YAF. These were not YAF chapters. They were independent student organizations. But those organizations called YAF to come in and help out, did they not? They called YAF to help out. And what YAF did was supply money from out-of-state. They consulted on the phone from out-of-state. They supplied materials to these independent organizations from out-of-state. But the other conducting, if it doesn't conducting affairs include the activity that is a subject matter of this lawsuit, soliciting funds, isn't that part of the foundation's mission to solicit funds? Sure. So they are targeting donors in Illinois, coming to Illinois, hiring a lawyer in Illinois to solicit funds from somebody who has a big heart that wants to give the foundation money? That's not conducting affairs? That's what the trial court found, correct? That is what the trial court found. And what's the standard of review with respect to that factual finding? Well, in this case, the original trial judge, Judge French, applied the minimum contacts test, which would be, for example, if two YAF people were driving through Illinois and ended up in a traffic accident in Illinois, the Illinois courts would have subject matter jurisdiction to decide who's at fault in that traffic accident. That's the minimum contact test. But the mere fact that they drove through Illinois, although there might have been minimum contact for that auto accident case, doesn't give general jurisdiction of Illinois over that, over YAF, simply because they drove through Illinois. Oh, I'm sorry. Go ahead, sir. And all of these activities were interstate, and they go back to there's no reason why the cases which are the well-settled law, going all the way from the U.S. Supreme Court to the Illinois Supreme Court and the appellate courts in Illinois, as the interstate commerce does not constitute transacting business within Illinois. And there's no reason why those cases should not also apply to conducting affairs in Illinois. Well, I think we could parse words all morning on this issue, and I'd like you in a moment to move on to what I think is the overarching issue, and that is the curability of the lack of authority. But I think you make the argument that these activities clearly were intended specifically to promote the not-for-profits mission in Illinois. And I think we'll decide if that's sufficient to bring you within the ambit of conducting affairs. But I take it, obviously, you're asking this Court to find that the lawsuit filed without specifically complying with the Not-for-Profit Corporation Act is a curable defect, correct? That's correct, yes. Why is that a curable defect? Well, this Court, the Second District, held in the Americo case, Americo Field Office v. Oniforio, 22 Ill. F. 3rd, 989, 1974. And it's consistent with the other cases in Illinois, the other appellate cases, that the trial court has jurisdiction over a case filed even though there was no registration, no certificate of authority. I think that's clear. I think there's personal and subject matter jurisdiction. But the law is replete with technical prerequisites where cases are dismissed if there's not technical compliance. So why is this any different? What's the compelling legal reason to give a pass to a corporation that doesn't comply with the Act at the outset? Well, first of all, I would, again, emphasize that the law in Illinois has been, and the defendant has cited no cases to the contrary, that there has never been a dismissal with prejudice of a case filed for lack of authority. And the language of the statute says, shall not maintain. And so the cases have come down and said, well, it should be stayed. There should be an opportunity for the plaintiff to remedy the situation by qualifying, or in the case of the tax cases, by paying the tax. And the idea is, if the purpose of the closed-door statute is to obtain compliance with the registration statute, then the fact that YAF registered before this case was dismissed under 2-1009 ought to allow YAF to cure that defendant. So maintain could be interpreted two ways. It could be commenced, which I believe is what the trial court held, or it could be interpreted as continued, seems to be what you're suggesting. Right. But let me ask you one question. Are there public policy reasons why we should find that this defect is curable? I think the public policy is that the plaintiff would be deprived of its claims for a mere technical error. And while, yes, there are cases where technical errors are fatal, I'm not denying that. It happens all the time. It happens all the time. But in this case, the courts have not held that in the past. They've allowed that. They've specifically found that this is a waivable error. And this case, and particularly, and then let me direct the attention of the court to the saving statute, 13-217. 13-217, all that it requires, and this is a remedial statute, and the courts of this state have been very generous in terms of allowing plaintiffs to make use of this. All that it requires is that there be an action which has been dismissed under 2-1009. Both of those conditions exist here. There was an action. And the cornet jurisdiction. And the cornet jurisdiction. And it was dismissed voluntarily under 2-1009. It was not dismissed involuntarily, which would make it a totally different case. It was dismissed voluntarily. And 2-1009, let me point out, also requires, before the court can even enter a dismissal under that section, that there be an action. So if there was an action under 2-1009 when Judge French dismissed the original case, with no objection from the other side, there's an action which allows a cure under the same statute, 13-217. Excuse me. I know we derailed you the minute you stepped up, and you said that the defendant must prevail on certain things. Do you want to just touch on the other areas you believe the defendant must prevail? Yeah. First, on the question of whether YF was required to register. Second, on the question, which I think I've already alluded to, that the proper remedy is a stay rather than a dismissal. And, in fact, I would point out Judge French did not dismiss the original action, even though she found that YF was required to register. Instead, she allowed YF an opportunity to re-plead if we wanted to, presumably to allow us to register and then re-plead. Instead, we dismissed under 2-1009. And third, the defendant must demonstrate that the same statute, 13-217, does not apply. And so those are the hurdles. And the defendant has provided the court with virtually no case law supporting any of these propositions. And there's no case law under which any not-for-profit corporation was found to be conducting affairs without authority. There's no cases and no reasons applied why there should be a different view of what transacting business in Illinois is from conducting affairs in Illinois. Well, on that point, your client was registered with the Attorney General's Office as a charitable organization, correct? Correct. And that is required before we can solicit funds, whether that's in-state or out-state. Before we can solicit funds, you have to register. And they worked. And your position is that that has nothing to do with conducting affairs as long as that activity is taking place from outside of Illinois? That's correct. That's correct. Because there's a difference. When you register with the Attorney General, you are subjecting yourself to the Attorney General's oversight with respect to your fundraising activities. But when you register with the Secretary of State as a foreign corporation, you're subject to the general jurisdiction of the Illinois Courts for any matter. There's personal jurisdiction over YAF now because we have registered on any case. And we can be found here. Counsel, you also raised two constitutional issues, Commerce Clause and First Amendment. As you know, generally, the Court of Appeals does not reach constitutional issues if we do not have to address them. If we were to find that the failure to register initially was curable, will we need to reach those issues? Not at all. Not at all. If the Court either finds that the defect didn't exist or that it was curable or that 13-217 applies, we don't need to get to any constitutional issues. And with respect to the interstate commerce, the interstate commerce concerns really go to the interpretation of what transacting business or conducting affairs would be. And I would say, I would also point out that the defendants have supplied no cases supporting the Nullity Doctrine. The only case, well, there have been no cases under these closed-door statutes where a Nullity Doctrine has been applied. Should we look to other cases where the Nullity Doctrine has been applied? Well, we cited the recent Illinois Supreme Court case in, that was, yeah, Downtown Disclosal, was cited in our papers. We cited it, not the others. The trial court has discretion to dismiss under 137. For not having an Illinois attorney. Licensed attorney. Right. But the trial court in these cases did not exercise that discretion, didn't use the balancing test. My point is, do you believe that the trial court has discretion to dismiss the case? And so I don't think this court should extend it to an area where it's never been applied before. I think through your questions, you've covered my argument. Any further questions? And so I would ask the court for the reasons expressed this morning and in our briefs that the decision be reversed and the case be demanded in the trial court. Thank you. We'll have an opportunity to address this again. Thank you, sir. Mr. Shelton. Good morning, Your Honors. This is Tim Shelton on behalf of the defendant, Mr. Wood. May it please the court. Counsel. We did cite two old Illinois cases in which the failure to get the authority to do, to operate in the state was fatal to the cause of action. And those were the United Lead case and Cincinnati. When were they decided? Do you recall? In 1906 for United Lead and I'm not quite sure for Cincinnati. They were a while ago, but they stand for the principle that if you go against what the legislature provides. What do you believe the legislative intent was behind the requirement to register? Well, I think the requirement to register is there under any statute dealing with a corporation. And what their intents may or may not be, the intention of different ones, I don't know. We know exactly what they intended when they want them to register, except to keep track of the activities in Illinois, what's going on. Who would it protect? The registration, the requirement to register, who does that protect? That would protect the citizens of Illinois, ultimately. As soon as something were to happen under the corporation's watch at one of these events that YAF sponsors or something, Illinois officials, authorities did not even know they were here or why they were doing this. If they were not registered and one of the citizens was harmed in some way by their activities, would they, the citizens, be able to sue them? I believe. To recover? Yes. If they were not registered? Right. Yes. And under this statute they can defend a lawsuit. Well, that segues into my next question. Young America's failure to seek authority would seem to be a matter arguably between Young America, as you alluded to, and the state. Why should you benefit from Young America's failure to comply and then assert it as a personal defense and deprive them of what otherwise might be a meritorious cause of action? Why should that be the public policy of the state? Simply because the legislature stated that it is and said you must register before you do anything. And there's a statute of limitations involved. We can't not register. You must register as a matter between the state and the corporation. But why should another citizen get the benefits and use that as a defense? You said it seems to be between the state protecting the citizens generally. Why should that become then available as a defense? Personally to another partner? Because in this case there's a statute of limitations involved. And we have to be able to say whether they had the capacity to sue when they brought suit in the statute of limitations. Statute of limitations, as we all know, protect people, potential defendants, give them notice that they are no longer subject to being sued. Where is the prejudice here? The parties all knew of the lawsuit, knew that there was a lawsuit. So the purpose behind the statute of limitations, as you said, so you don't prejudice the party. You don't say, boy, here it is five years later and you're being sued. Everyone saw this coming. Everyone knew it was coming. So when they cured, where was the prejudice? When they cured. Six months after the statute of limitations ran, they cured. I beg to differ that a statute of limitations can be so easily set aside. No, relate back. No, not relate back. In this case it was a six-month statute. It had a defective filing. Lack of capacity was made. It was not cured until six months after the statute of limitations ran. Well, if we read maintain as commenced, then you have a viable point. What about if we interpret the language maintain as continue? Does that change the result? Well, not in my mind because I think 217 cannot be stretched. That's putting too much pressure. It's asking too much of this statute to say that it can cure two defects. It can actually cure. When it says a pending action when the statute of limitations runs, it contemplates, I believe, a non-defective pending action. You know, what you believe in and what this court has said, do you have a response to counsel's argument regarding AmeriCorps? There's precedent in this district for allowing a complaint to relate back that is cured? There's precedent for the concept of allowing, and AmeriCorps it didn't happen. I mean, AmeriCorps, they had actually never raised the issue in the trial court at all. The judgment had already come down, so there was no opportunity for the trial court to actually consider. And the appellate court, the second district, did say that if they raised it earlier, it would have been an opportunity to consider the issue. I firmly believe that they had considered it. They had come to the same conclusion Judge French and Judge Lester and Judge Sheen all came to. That's another point. I noticed in the argument below, I stopped counting it eight times that you referred to the decisions by French and Sheen that really no substantive argument on case law. I think Judge Lester said, I'm not the appellate court, but I agree that Judge French did not abuse her discretion and then basically followed what French and Sheen did. You understand the point that you have to have some appellate authority. If there's authority from this district, we have an obligation to find or to follow that authority unless we decide that it was poorly reasoned or not workable. What's your response to that argument? My response is even if you follow AmeriCorps. This goes to Justice Hudson's comment, which is if we do the maintain, that is the AmeriCorps and maybe that is the rule then in the second district. If it is, we still don't know where 217 can be stretched to go that far and say plaintiff is asking for two free passes. Free pass was the word we had before. Two passes. One, we didn't comply with the statute. The registration statute too, we didn't comply with the statute of limitations. There's nothing in the language of 217 that suggests that it should apply to allow someone to sit on a defective filing for six months after the statute of limitations and three months before the statute of limitations, and not to take any step to fix this thing. And then suddenly say, okay, the dismissal of refiling, which is also an issue for the court because the statute itself says dismissed by the plaintiff. It doesn't say when an order of dismissal is entered by the court from whom voluntary dismissal is sought. It says by the plaintiff. In this case, the motion to dismiss was brought before, to voluntarily dismiss, before the registration occurred. Counsel, let me ask you a different point. There's case law authority in the state of Illinois, online food and liquors, 65 Illinois appellate bird 140. It stands for the proposition it allows for profit corporations to cure statutory issues such as we have here, similar omissions. So why shouldn't the not-for-profit act be interpreted the same as the authority of the Corporation Act? Why should we treat them differently? Because the legislature does. It's so distinct, this difference in the language. Now, I don't even have to know what they meant. They intended different results. Based on what? Where's your authority for that? That's the statutory construction rule. If the legislature uses different language in different statutes, it means a different result. And what is the different language specifically you're referring to? Conducting affairs as opposed to transacting business. We don't take those concepts, sir, analogously. No, I definitely do not. And we go way into that in the brief about why those are really not the same. One contemplates profit, making money out of the state. The other contemplates a variety of activities, including teaching the young people how to follow the legacy of Ronald Reagan. So the not-for-profit with these good, admirable causes should be treated more harshly and punitively if they don't comply than the profit corporations, right? Yes. That seems to be what the legislature intended. Is there logic in that? I beg to wonder whether we need to ask what the legislature's logic is. It is being recorded, so I know you want to be careful. I would try to get to that perhaps later, but the point is the logic is in the language. It's clear. It's unambiguous. Would that be an absurd result, though? We should not interpret a statutory language which would result in an absurdity, which would be that, as Justice Hudson said, we treat not-for-profits, corporations that are doing good work, differently than corporations doing business here in the state of Illinois. Perhaps the legislature, as we mentioned in our brief, had a greater interest in a corporation coming in and soliciting charitable contributions from living trusts than it did in a corporation conducting some of the kind of contract business arrangement in Illinois. I don't know quite why. I know that they were scrupulous about maintaining this distinction in words throughout the statute, and that's another construction. But do you have any case law specifically that holds that not-for-profit corporations should not have the opportunity to cure omissions that profit corporations do? This is your plain language interpretation, but you don't have any case law that says they should be treated differently, do you? Not that it says that, to answer your question straightforwardly, but the for-profit statute also has all these exceptions built into the rule, the registration requirement, so that it becomes a different animal. You can't suddenly apply this statute for profit corporations to a not-for-profit when there is a statute. The legislature decided to make a statute that addresses not-for-profit, and they made it differently than the other one, including none of these exceptions, which are the exceptions being relied upon. We say if you just apply the statute directly as it says, by its wording, conducting affairs as we established, I thought, at the beginning, there's kind of no question that that fits. Not to parse words, but let's think about that logically. Just follow this logic. Transacting business, I mean, that could imply, I mean, a profit corporation, they're transacting business to make money, correct? If you're not-for-profit, maybe you're not transacting business in the monetary sense, you're conducting affairs. Why are those two concepts so totally different in your mind? In your mind, obviously, the whole case turns on the difference between those phrases. It does, and the difference is in the choice of language. I know this, in a sense, is a case of first impression, because we don't have any other case interpreting the not-for-profit corporation or this provision of it, but for you, for this court, to implant, insert the exceptions that have been carved out by the legislature, codified in the for-profit statute, and say they also apply to not-for-profits when the legislature has not chosen to do that yet, I think it's their decision to amend the statute if they want to. They amended- Well, how would they amend it? Does it say that it changes the language to conducting affairs? How are they going to amend it? By saying the same exceptions, the definitions of what is not transacting business to be found in the for-profit apply in the not-for-profit. In other words, the sporadic, this is their whole argument, is that their actions here were so sporadic and non-continuous that they don't, that the thought language comes from the for-profit. It doesn't, you can't, you don't have that. Right, you may get past that, but ultimately, again, I think the overarching question is the curability issue, because depending on how you roll on that, these other issues may fall. So we may decide that they were conducting affairs, quite frankly, but you still have this curability issue, right? That's right. Either way. Yes. Yes. In your briefing, in the trial court, you mixed standing with capacity to sue. Would you agree that those are separate? Capacity to sue is not necessarily standing to sue. Somebody can have standing and not have capacity to sue. Yes. So that was a mistake. Standing was a word used by Judge French. And by you below in the arguments. It wasn't you or your partner. But they're two different animals. Do you agree? Well, in a sense, standing has, I know that standing means you're, you know, have a stake in the game. A stake in the game, but it also means, which in that sense applies here, you have a legal right to pursue a solution to your stake. So they clearly had standing. They just lacked capacity to sue because they weren't registered, correct? At the time they filed. They clearly had standing. I don't know that they had a legal right to pursue anything. I just want to make clear, you agree that standing and capacity are two different animals, correct? To say that they're actually two completely different animals, I didn't say completely different. They may be analogous cases, but they clearly had standing to sue. If standing means you have a legal right to bring a suit, no. Standing means you have a stake in the game. But for the lack of registration they would have had to pursue a suit. Okay. With that adjustment, I would say. Well, the adjustment is no different than a lawyer who's not registered in the state of Illinois, who's not licensed here filing a claim. He doesn't have, he doesn't, the client has standing, but the complaint could be determined to be a nullity by the trial court.  Anything further? You can wrap up real quickly, sir. Real quickly. Okay. You just mentioned the lawyer. I wanted to mention the downtown disposal case, which I don't think, it talks about the nullity doctrine, unauthorized practice of law, but that is not, that is so distinguished from this case because it involves an area of the law which is under the purview of the Supreme Court. The Supreme Court makes the rules and so on. Even the statute for unauthorized practice defers to the Supreme Court and the courts and says you have a matter of discretion here to make a determination. In this case, the statute speaks and the courts are here to interpret that plain language and try to get the intent as best they can. They don't have discretion for the consequence. The consequence is built into the statute. And it's a hammer that follows just a minimal registration, no burden whatsoever. But it says if you don't, there's a big consequence. I know at the end. So we request that you affirm. Thank you. Thank you. Thank you, Your Honors. Just briefly, Section 13217 applies in addition to cases of voluntary dismissal, includes cases that were dismissed for lack of jurisdiction by the federal court. And if it can apply to those kinds of cases, surely it can apply to the kind of case we have here where the trial court, as this Court has held, did in fact have jurisdiction of the original case. Counsel talks about two free passes. I'm not sure where they get two free passes. If there was a mistake, if there was a defect, it was in not registering prior to the filing of the original case.  Let me ask you this question. Counsel indicated that the plain language of the Not-for-Profit Corporation Act evinces an intent to treat that differently on the curability issue than the profit. If you do not agree with that and you take a result, tell us why. Even if, and I'll say even if, the legislative intent of using transacting business in one case and conducting affairs in the other case, indicating an intent for a different standard as to whether or not registration was required, and I don't think it did, but even if that were the case, the remedy portion of the closed-door statute, everything that follows that, is exactly identical with for-profit corporations, with failure-to-pay franchise taxes, and with not-for-profit corporations. They track? I'm sorry? They track? They track exactly. And so with respect to the remedy, there's no difference in the legislative intent that could be taken from the statutory language. And so therefore, there's no reason that the cases involving the tax cases or the for-profit corporation cases should not apply equally to the not-for-profit corporations. And I think what he meant by the two free passes is the failure to register and the statute of limitations that he's submitting that your client far exceeded the statute of limitations. But that's exactly what Section 13217 is intended to address. When the statute expires during the pendency of the first action, you get the additional time. And once we dismiss, we refile within days. Thank you, Your Honor. Thank you for your time. Mr. Shulman, Mr. Brisky, thank you for your time. I appreciate your arguments. The court will be in recess, and a decision will be rendered in due course. We'll be back out in a few minutes for the next hearing.